CASE No. 899.

DUBOIS v. THOMAS.

1. The Court of Common Pleas in virtue of its general authority, possesses the power of substituting new records, including judgments, in the place of originals lost or destroyed.
2. The act of assembly entitled " An act to provide a mode by which to prepetuate testimony in relation to deeds, wills, choses in action, other papers and records destroyed or lost during the recent war," approved December 21st, 1865, neither took away nor suspended the ordinary power of the Court of Common Pleas in such cases.
3. The act of 1871 which renews and extends this act of 1865, until February 11th, 1876, was not intended to deny to the courts, after the limited date, the remedy provided by the act of 1865.

Before ALDRICH, J., Colleton, March, 1880.

This was an application dàted in February, 1880, for leave to substitute a new record for a judgment of the Court of Common Pleas for Colleton district, entered up in April, 1859, and burned in the City of Columbia on February 17th, 1865. The order was granted, and defendant appealed.

*Messrs. Henderson & Behre,* for appellants.

*Messrs. Tracy & Tracy,* contra.

July 30th, 1880. The opinion of the court was delivered by WILLARD, C. J. This was an application to the Court of Common Pleas to substitute a new record of a judgment for the original record alleged to have been destroyed. D. Padgett, one of the defendants, and the appellant here, opposed the application on the ground " that the time limited by the act of assembly, entitled an act to provide a mode by which to perpetuate testimony in relation to wills, choses in action, other papers and records detroyed or lost during the recent war, dated December 21st, 1865, and acts amendatory thereto, within which parties were allowed to come in and obtain relief thereunder has long since expired." This objection was overruled and an order made substituting a new record for such original record. The only questions submitted by the present appeal are, whether the time allowed by statute for making such application has expired, and whether the proper effect of the acts in question is to preclude the making of such application after the expiration of the time allowed for that purpose.

It is material to inquire whether the Court of Common Pleas, prior to the statute, possessed power to allow the substitution of new records in the place of original records lost or destroyed, as having a bearing on the proper effect of the statute. This will constitute the first point of inquiry. No direct authorities have been found in this state, but abundant authority exists for concluding that the superior courts of law in England possess such authority.

*King* v. *Bolton*, 1 *Stra.* 140. In this case the record of the King's Bench was stolen while being transmitted to the House of Lords, and a new record was ordered to be filed by the King's Bench, which was affirmed in the House of Lords.

*Evans* v. *Thomas*, 2 *Stra.* 833. Here a judgment roll was lost after being "docquetted," but before being filed. Leave was granted to file a new roll, the defendant being dead and the executor consenting. The allowance of this substitution cannot be regarded as resting entirely on the consent of the parties, as the court took into consideration its effect upon purchasers, as appears by the statement of the report that "there being a docquet it could be no deceit upon purchasers."

*Douglass* v. *Yellop*, 2 *Burr.* 722. Through the neglect of the clerk, in 1729, a judgment had not been entered and the roll was lost. A rule was made thirty years after, in 1759, for the clerk to sign a new roll, "wherein is entered the judgment, signed in this cause in Michaelmass Term, 1729, and filed amongst the rolls of that term, a special entry being first made expressing the day of docquetting the same."

*Dagrell* v. *Bridge*, 2 *Stra.* 1264. In that case a new *postea* was ordered to be made out in the place of one lost.

It appears by these authorities that the courts of England, of general jurisdiction, possess authority to substitute a new judgment record for one lost or stolen, and that the lapse of thirty years does not preclude an application for that purpose from being granted. No statute authority is referred to as the ground of such competency, and it must be referred to the principles of the common law.

If such a power results from the principles of the common law it would apply to our Circuit Courts of Common Pleas and General Sessions as embodying all the principles of jurisdiction recognized by the common law as appertaining to courts of general original jurisdiction, when not otherwise denied by positive law, either constitutional or statutory. It is certainly essential to the powers of these courts that they should possess such competency, and if this proposition is maintained they must be deemed to possess it in virtue of the principle that a grant of

general public authority contains, by implication, all that is necessary to the full exercise of such authority.

If a judgment roll should be abstracted and destroyed by the party against whom the judgment was recovered, no one would doubt the authority of the court to replace it, as to suppose inability so to do would be to deny to the courts that which is clearly essential to the efficacy of their judgments. There is no difference in principle, as it regards the power of the court to replace a record, between the two cases of a malicious destruction by the act of a party before the court and of a loss or destruction occurring by accident or negligence without malicious intent. The power put in exercise is the same in both cases, however much difference there may be in the reasons calling for its exercise in the two cases. Where the destruction or loss occurs while the plaintiff is actively pressing his rights under such judgment the necessity for such a power is apparent. If, then, the power exists for any length of time, or for any purpose, it must be regarded as a general power, there being nothing in its nature to suggest that it is either of a temporary or special or restricted character. While a judgment remains in a condition to be enforced, the powers and duties of the court continue unchanged, and there is as much reason for the continuance of such a power as there is for its existence in the case of recent judgments actively pressed. Section 437 of the code, authorizing the court to supply lost *pleadings and papers,* must therefore be regarded as conferring no new power, but as recognizing one that already existed, and, therefore, it is unnecessary to consider whether judgments are within the description of those records capable of being restored under that section, for, regarding it in that light, there is nothing expressed or necessarily implied by it that can be regarded as a limitation of pre-existing powers. We are of opinion that the Court of Common Pleas, independently of the statutes in question and in virtue of its general authority, possessed the general power of substituting new records in the place of its original records lost or destroyed, and that that power extended to judgment records.

C

The legislature could, beyond doubt, substitute for the general mode of proceeding by motion to the court for relief of this character, a more formal proceeding, or a different and inconsistent proceeding, and if it appeared that the object of such legislation was substitution and not the creation of an auxiliary or additional remedy, or the confirmation of an existing one, such substitution might have the effect either to take away the previous remedy or suspend its operation while the statutory remedy was in force. We do not find any such intent to create a substitute for the common law remedy by motion, in such cases, in the statute in question.

The remedy there contemplated is by motion, with no new incidents or limitations as to the mode of proceeding or the authority of the court thereunder. The most that can be assumed is that it was thought doubtful whether requisite authority existed in the courts for that purpose and deemed desirable that the competency of the courts in such a case should be placed beyond boubt. It is reasonable to assume that such was the motive that induced the passage of the act. As there is nothing in the mode of procedure, or in the results capable of being attained under the statute, that either enlarged or narrowed the powers previously possessed by the Court of Common Pleas, we see no reason for holding that the adoption of the statute either took away or suspended the ordinary power of the court in such cases.

Unless the statutes in question have some effect additional to that already discussed, it will be unnecessary to inquire whether the provisions of the statute were in force at the time the order appealed from was made or had expired by their own limitation, for, in either case, the power of the court to grant that relief is undoubted.

It is contended by the appellant that the act of 1871, (15 *Stat.* 537,) "renews and extends the act of 1865 until February 11th, 1876, which time has long since expired," and, therefore, has the effect of a declaration that the act of 1865 shall not be operative after that day. It is claimed that this is equivalent to a declaration that the remedy provided by the act shall not be allowed after that day. It is not claimed that such is the

express declaration of the act, the argument being that it is a fair and reasonable inference arising from the consideration of the objects that the statute had in view. As that which is claimed is the destruction of a power vital to the administration of justice, such a result cannot be admitted except where the intent to that effect is clearly expressed or may be gathered on the principles of necessary construction. It is clear that no such ground exists in the present case, as there is no express declaration, and all the purposes of the statute can be attained without ascribing such effect to them. But, even if the statute was open for implications, standing on grounds of less certainty than such as are competent to sustain a necessary inference, it would be impossible for this court to say from any evidence furnished by the statute in question, that the legislature had before its mind any question of the propriety of withdrawing from the courts powers of so important a character or subjecting them to restrictions of any kind. Without such fact there is nothing on which to base a conclusion that the statute intended to interfere in any way with the common law powers of the courts in cases like the present.

The appeal must be dismissed.

McIVER and McGOWAN, A. J.'s, concurred.